Michael A. Castaldi, J.
In this article 78 proceeding, petitioner, a student at Queens College of the City University of New York, seeks a judgment, inter alia, restraining the respondents ‘ ‘ from prohibiting the petitioner from extending an invitation to representatives of the United States military services to enter into the campus and distribute information or recruit therein as a guest of ‘Young Americans for Freedom’”, a recognized campus organization.
Respondent Joseph S. Murphy, president of Queens College, opposes the application on the ground that he is continuing a temporary ban of “on campus recruitment ” of any kind.
In support of their position, respondents point to section 6202 of Education Law which vests the Board of Higher Education with the control and administration of the City University of New York and to formulate the policies of the university. Queens College is one of the educational units of the university. Under the board’s by-laws (§ 11.4) the respondent Murphy, as president, is the chief executive officer of the college. Counsel for respondents argues that the courts may not interfere with the administrative discretion exercised by college authorities sub *426 ject, of course, to the tests of arbitrariness, capriciousness or illegality. With that decisional rule this court is in complete agreement. (Matter of Lesser v. Board of Educ., 18 A D 2d 388.) Indeed, institutions of learning are £ 1 free to a large degree, from judicial restraints * * * and they have inherent authority to maintain order on their campuses ”. (Paynter v. New York Univ., 66 Misc 2d 92.) To the foregoing the court would add that the wisdom of the policy on a matter, as distinguished from its legality, is of no judicial concern.
The difficulty with the respondents in this proceeding is that they do not have the factual props to support their legal argument. They place main reliance upon a ££ temporary ban ” of recruitment ordered on April 7, 1969 by former Queens College president, Dr. Joseph P. McMurray. In then issuing the ban, Dr. McMurray said: “ I have agreed to suspend all recruitment for a reasonable length of time pending a student referendum to be held within the next two weeks. The future policy on recruiting will be determined by student vote.” In December, 1969 the students voted in favor of £ ‘ open recruitment ”. Thereafter, a panel was appointed by President McMurray to make inquiry and report on the referendum vote had by the students. The panel submitted its report to the president in March, 1970, stating that £ £ the results of the voting should be considered a valid expression of opinion of those voting ”, but recommended that recruitment remain suspended pending submission of the report to the faculty council for its consideration. So far as the court can determine from the papers now before him, nothing definitive has been formulated concerning the policy of the respondents on the question of recruitment since the students voted in favor of “ open recruitment ”. However, in opposition to the instant application, President Murphy states that an imminent policy decision on recruitment is expected from the Academic Senate of Queens College. Admittedly, that is prospective action as to which the court is totally unenlightened.
Apart from whether there is now any policy on recruitment, there is another infirmity in respondents’ case. What is tfie scope and what is the meaning that respondents would ascribe to the term ‘ ‘ recruitment ’ ’ ? What are the standards to be used in determining if a particular talk or other activity comes within the proscribed “recruitment”? Let us assume that Captain Lovell of the famed astronauts were to speak on his ventures to the moon and that during the course of the talk he made references to the educational requisites of an astronaut and the opportunities afforded to a student who may be interested in aerospace. *427 Would that be deemed “ recruitment ” within the intendment of the board’s purported banl The record before the court does not furnish the answers.
Upon the oral argument of this proceeding counsel for petitioner reflected a commendable spirit of compromise. He stated that petitioner and the Young Americans for Freedom do not contemplate a speaker whose objective would be military recruitment; that there would be no signing up or enlisting of any students nor would there be any kindred activities. In turn, President Murphy states that it is not his intention to discourage any person or organization from inviting speakers to the campus and that he is committed to the encouragement of freedom of speech and freedom of thought on the campus. Under all of the circumstances it is regrettable that the immediate controversy was not resolved at the administrative level. That is where the controversy belongs; not in the judicial forum.
Consistent with the views above stated, petitioner’s application is granted to the extent that respondents are to grant permission to the petitioner to invite a designated speaker or speakers on the campus, subject to (1) compliance with the procedural requirements incident to the processing of the necessary form of application, and (2) the right of the respondents or either of them to impose such conditions as they deem reasonable in granting the permission sought by petitioner. If the conditions imposed by the respondents be arbitrary or unreasonable or otherwise violative of petitioner’s rights, he is not without redress.